UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMARE KASSA,

    Plaintiff,

  v.

SELLAND AUTO TRANSPORT, INC.,

    Defendant.

NO. C05-1304P

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The above-entitled Court, having received and reviewed:

1. Defendant's Motion for Summary Judgment

2. Plaintiff's Response to Defendant's Motion for Summary Judgment

3. Defendant's Reply in Support of Motion for Summary Judgment

4. Plaintiff's Request to Respond and Request for Continuance to Hear Defendant's Summary Judgment Motion

and all exhibits and declarations attached thereto, makes the following ruling:

IT IS HEREBY ORDERED that the motion is PARTIALLY GRANTED and PARTIALLY DENIED. Plaintiff's claims for violation of § 1981 (Complaint, ¶ 5.1), Washington Law Against Discrimination: Racial Discrimination and Disparate Treatment (¶ 5.2), and Washington's Law of Wrongful Discharge in Violation of Public Policy (¶ 5.4) are DISMISSED; his hostile work environment claim (¶ 5.3) will be allowed to proceed.

**ORDER ON**
**SUMM JMT - 1**

**Background**

Defendant Selland Auto Transport, Inc. ("SAT") is in the automobile-truck hauling business – they load vehicles onto special trailers and transport them to various auto dealers. The hauling trucks, the trailers and the cargo are all very expensive – the value of a truck hauling a fully-loaded trailer can approach $1 million. Beyond the issue of value is the potentially lethal nature of a fully-loaded multi-ton rig. Safety is a paramount concern for SAT, and all of its drivers are subject to rigorous background checks and an in-house training program before the company will permit them to haul their freight in their vehicles.

In July 2004, Plaintiff Amare Kassa applied for employment with SAT. He was interviewed by Randy McCready, the driver supervisor/recruiter, who forwarded his application to SAT's Safety Department for a background check. Kassa was then assigned for a daily two-week training period to Chuck Kerrigan, who submitted daily trainee evaluations of Plaintiff. For his part, Kassa turned in weekly program evaluations, which included several positive comments about Kerrigan ("Chuck Kerrigan is an excellent trainer" and "very respectful." Def. Exh's 6 and 11.).

Kerrigan's evaluations of Plaintiff evidence an increasing sense that Kassa was not responding well to the training. From initial comments that he was "a little shaky," driving slowly on the freeway and having trouble shifting gears on the truck (Def. Exh's 4, 5, 7 and 8), Kerrigan went on to chronicle two incidents near the end of the training period where he alleges that Kassa almost drove vehicles off the trailer ramp (Def. Exh. 10; Kerrigan Dep., pp. 72-73). The second incident – on Friday, August 27, 2004 – was also witnessed by McCready. McCready Dep., p. 62. Based on the training evaluations and his own observations, McCready decided to terminate Kassa's training. His stated reasons for doing so were his concerns for the safety of the public and his company's equipment. Id. at 40-42, 111-112.

**ORDER ON
SUMM JMT - 2**

  Kassa relates a considerably different training experience. He claims "some years" of prior truck driving experience and the requisite skills and abilities to perform the job for which SAT was training him. Kassa Decl., ¶ 9. It was his impression that both McCready and Kerrigan basically approved of his driving abilities ("I received numerous compliments and praises from my immediate supervisor Mr. Randy McCready and trainer regarding my performance as a driver." Id. at ¶ 4.), although he felt that McCready "was not very comfortable with me and. . . that his discomfort arose out his [*sic*] not liking African Americans or blacks." Id.

  Plaintiff alleges an ongoing pattern of abusive treatment from the trainer Kerrigan, including comments such as "you people do not know how to drive," "is this how you drive in your country," "they should send you people to wherever you came from" and "you should go back to your country." Id. at ¶¶ 5-6. Although he contends that he requested Kerrigan to cease this behavior, he indicates that his evaluations of the trainer did not record his complaints because Kerrigan insisted on being present while Kassa filled the evaluations out. Id. at ¶¶ 7-8. Plaintiff denies the allegations that he "almost flipped or dropped a car while loading." Id. at ¶ 9.

### Summary Judgment Standard of Review

  Summary judgment is not warranted if a material fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if. . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). This can be done be either producing evidence negating an essential element of plaintiff's claim, or by showing that plaintiff does not have enough evidence of an essential element to carry its ultimate

ORDER ON
SUMM JMT - 3

1  burden at trial. <u>Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1103 (9th Cir.
2  2000).

3  However, once the moving party has met its initial burden, the burden shifts to the nonmoving
4  party to establish the existence of an element essential to that party's case, and on which that party will
5  bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). To
6  discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have
7  evidence showing that there is a genuine issue for trial. <u>Id.</u>. At 324. In considering a motion for
8  summary judgment, however, "the court must draw all reasonable inferences in favor of the
9  nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Anderson</u>,
10 477 U.S. at 250-51. Additionally, "at the summary judgment stage the judge's function is not . . . to
11 weigh the evidence . . . but to determine whether there is a genuine issue for trial." <u>Liberty Lobby</u>,
12 477 U.S. at 249.

**Discussion**

<u>Tort of Outrage</u>

This tort requires proof of three elements:

1. Extreme and outrageous conduct;
2. Intentional or reckless infliction of emotional distress; and
3. Severe emotional distress on the part of plaintiff.

The level of misconduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Dicomes v. States</u>, 113 Wn.2d 612, 630 (1989). Even taking all Plaintiff's allegations as true and making every inference in his favor, the conduct which he describes from Kerrigan simply does not rise to the level of indecency, atrocity and intolerability that this tort requires.

**ORDER ON**
**SUMM JMT - 4**

Secondly, Plaintiff has sued his former employer, not personally sought damages from the individual allegedly responsible for the outrage. If Kerrigan engaged in the conduct which Plaintiff alleges, Plaintiff has provided no proof (nor even the accusation) that he did so as part of his duties for the defendant company. *See* Snyder v. Medical Services Corp., 145 Wn.2d 233 (2001), where the Washington Supreme Court affirmed that the state does not assess liability upon employers for intentional torts outside the scope of an employee's job responsibilities:

> Niece v. Elmview Group Home, 79 Wash.App. 660, 664, 904 P.2d 784 (1995) noted, "When an employee's intentionally tortious or criminal acts are not in furtherance of the employer's business, the employer is not liable as a matter of law, even if the employment situation provided the opportunity or means for the employee's wrongful acts." *Id.* at 664, 904 P.2d 784 (citing Bratton v. Calkins, 73 Wash.App. 492, 498, 870 P.2d 981 (1994); Kuehn v. White, 24 Wash.App. 274, 278, 600 P.2d 679 (1979)). We affirmed Niece holding, "[C]urrent Washington law clearly rejects vicarious liability for intentional or criminal conduct outside the scope of employment."

Id. at 242-243.

The Court finds as a matter of law, Plaintiff has not established proof of the requisite elements of this tort to be permitted to proceed on this cause of action.

Termination in Violation of a Public Policy

Plaintiff has failed to adequately respond to Defendant's arguments that, as a matter of law, his cause of action at ¶ 5.4 of his Complaint ("Violations of Washington's Law of Wrongful Discharge in Violation of Public Policy (RCW 49.17 *et. seq.* and/or 51.48.025)") should be dismissed. The Court agrees that, under any conceivable set of facts Plaintiff could produce, there is no legal support for this claim.

In the first place, Plaintiff has provided no evidence of any violation of RCW 49.17 (Washington Industrial Safety and Health Act) or RCW 51.48.025 (Employer Retaliation for Filing a Worker's Comp Claim), the statutes he cites in his Complaint. Once the moving party has met its burden of showing the absence of a genuine issue of fact for trial, Plaintiff is not permitted to rely on

**ORDER ON
SUMM JMT - 5**

his pleadings, but must produce evidence establishing that such an issue exists. As regards this cause of action, Plaintiff has not done so.

Secondly, Plaintiff has failed to present a prima facie case of breach of a public policy, which consists of proof of the following elements:

1. The existence of a clear Washington public policy;
2. Jeopardy attaching to the continued existence of the policy because no other remedies exist for its protection;
3. Conduct related to the public policy which caused his dismissal; and
4. No overriding justification for the conduct by defendant.

Korslund v. Dyncorp Tri-Cities Services, 156 Wn.2d, 168, 178 (2005); Gardner v. Loomis Armored, 128 Wn.2d 931, 941 (1996).

Plaintiff does nothing more in response to this part of Defendant's motion than assert, without evidentiary or legal support, that "Plaintiff successfully establishes the four elements required by Washington courts." Pltf Brief, p. 9. This is inadequate and the Court finds that, as a matter of law, Defendant are entitled to a summary judgment of dismissal of this cause of action.

<u>Racial Discrimination Claims</u>

At the outset, the Court points out that Defendant's position that Plaintiff was not an employee is not persuasive. Defendant seeks to characterize Plaintiff as a "trainee" and not an "employee," but fails to cite either internal corporate documents that support such a distinction or statutory or case law which suggest that the courts have recognized a "trainee-employee" differentiation that is relevant in the employment discrimination context.

The Court agrees with Defendant's position that Plaintiff cannot maintain a cause of action for discrimination based on national origin under 42 U.S.C. § 1981 – that statutory scheme does not cover that form of discrimination. Ana Leon v. Federal Reserve Bank, 823 F.2d 928, 931 (6th Cir. 1987),

**ORDER ON SUMM JMT - 6**

1  cert. denied, 484 U.S. 945 (1987).  Plaintiff does not contest this argument, and the Court will assume
2  that its validity is conceded.

3  Plaintiff does not dispute Defendant's assertion that both his hiring and his termination were
4  approved by the same two individuals, the driver supervisor Randy McCready and the safety director,
5  Jill Snyder.  This permits Defendant to avail itself of the "same actor inference," which requires
6  Plaintiff to produce a sufficiently convincing quanta of evidence to "overcome a strong inference that
7  the adverse decision was not discrimination when the same decision maker has hired. . . the plaintiff in
8  the recent past."  Barker v. Advanced Silicon, 131 Wn.App. 616, 625 (2006).  Plaintiff's evidence
9  must be persuasive enough to answer the obvious question of how the court is to find a racial bias
10  when the person (or persons) who decided to terminate the plaintiff are the same persons who
11  approved the decision to hire him two weeks previously.  See Hill v. BCTI Income Trust Fund-I, 144
12  Wn.2d 172, 189-90 (2001).

13  Turning to the claims themselves, both the federal and state causes of action have similar
14  elements and burdens of proof.  See Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th
15  Cir.1998), and Chen v. State, 86 Wn.App. 183, 189, rev. denied, 133 Wn.2d 1020 (1997).  Plaintiff
16  must show that he is in a protected class, which he has indisputably done.  Plaintiff must demonstrate
17  that he has been terminated from his employment; Defendant does not contest this fact.  Plaintiff must
18  demonstrate that he was doing satisfactory work; there are disputed issues of material fact in this
19  regard (most notably, Plaintiff's denial of Defendant's allegations of two near-accidents involving
20  loading vehicles onto vehicle trailers) but this would inure to Plaintiff's benefit in a summary judgment
21  context.

22  Plaintiff is required to demonstrate that his race was a substantial factor in the decision to
23  terminate his training.  Mackay v. Acorn Custom Cabinetry, Inc., 127 Wn.2d 302, 310 (1995); Schuler
24  v. Chronicle Broadcasting Co., 793 F.2d 1010, 1011 (9th Cir. 1986).  Crucial to this undertaking is

**ORDER ON
SUMM JMT - 7**

1  the production of evidentiary "comparators:" proof that persons not in the protected class were
2  treated differently than Plaintiff. <u>Domingo v. Boeing Employees' Credit Union</u>, 124 Wn.App. 71, 81
3  (2004); <u>Cornwall v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1028 (9th Cir. 2006).

4        Plaintiff's proof is completely deficient in this regard.  Neither in his responsive pleadings nor
5  in the accompanying evidentiary exhibits does Plaintiff offer a single example of a similarly situated,
6  non-minority employee of Defendant's who was treated differently than he was; for example, that he
7  was replaced by a non-minority applicant following his termination.

8        This is a failure of Plaintiff's *prima facie* case for racial discrimination.  Based on this finding,
9  the Court deems it unnecessary to engage in the burden-shifting process of <u>McDonnell Douglas Corp.
10 v. Green</u>, 411 U.S. 792.  For the record, it does appear that Defendant has evidence of a legitimate,
11 non-discriminatory reason for terminating Plaintiff from the training.  Plaintiff's rebuttal proof must
12 overcome the strong presumptive force of the "same actor inference" discussed *supra*; this opinion
13 does not reach the issue of whether Plaintiff's proof is sufficient to overcome the inference and
14 suggest that Defendant's stated reasons for termination were pretextual.

15 <u>Hostile Work Environment</u>

16       Plaintiff makes a final claim for "Violations of Washington's Law Against Discrimination
17 (RCW 49.60 *et seq.*), Hostile Work Environment" (Complaint, ¶5.3).  Proof of this cause of action
18 requires Plaintiff to establish:

19       1.    That there was language or conduct concerning national origin or of a racial nature;

20       2.    That this language or conduct was unwelcome in the sense that Plaintiff regarded the conduct as undesirable or offensive, and did not solicit or incite it;
21

22       3.    That this conduct or language was so offensive or pervasive that it altered the conditions of Plaintiff's employment; and

23       4.    Either:

24           (a)    That an owner, manager, partner, or corporate officer of Defendant participated in the conduct or language; or
25

26 **ORDER ON
SUMM JMT - 8**

(b) That management knew, through complaints or other circumstances, of this conduct or language, and Defendant failed to take reasonably prompt and adequate corrective action reasonably designed to end it; or

(c) That management should have known of this harassment, because it was so pervasive or through other circumstances, and Defendant failed to take reasonably prompt and adequate corrective action reasonably designed to end it.

*See* Wash. Pattern Jury Instr. Civ. WPI 330.23; *see also* RCW 49.60.180(3); Glasgow v. Georgia-Pacific Corp., 103 Wn.2d 401 (1985).

The Court finds that Defendant has not met its burden on summary judgment regarding this claim. Viewing the facts in the light most favorable to Plaintiff, the first three elements of this cause of action have been established on a *prima facie* basis – Plaintiff's own testimony is sufficient to create the foundational proof of undesirable communication focused on his race or national origin and that such conduct was highly offensive to him.[1]

"Managers" are "those who have been given by the employer the authority and power to affect the hours, wages and working conditions of the employer's workers." Robel v. Roundup Corp., 148 Wn.2d 35, 38 n.5 (2002). Kerrigan, who was given the authority to train and evaluate Plaintiff and whose recommendation was at least partially responsible for his termination, fulfills this definition of "manager" and on that basis Defendant has not established, either as a matter of undisputed fact or as a matter of law, that it is entitled to summary judgment on this claim. While the Court does not consider it a particularly strong cause of action, weighing of credibility or likelihood of success at trial are not appropriate criteria in this context.

---

[1] The Court disagrees with Defendant's position that Plaintiff's declaration testimony is at odds with his deposition testimony and should therefore be disregarded. Plaintiff's declaration is consistent with the allegations in his Complaint, and not inconsistent with the testimony elicited at his deposition and cited by Defendant in its briefing.

**ORDER ON**
**SUMM JMT - 9**

<u>Plaintiff's Motion to Respond and Request for Continuance</u>

Following the submission of the opening and responsive briefs in this motion, Plaintiff filed a Motion to Respond and Request for Continuance to Hear Defendant's Summary Judgment Motion (Dkt. No. 25). Plaintiff's counsel wished additional time to respond to allegations by opposing counsel concerning his conduct (which, although the Court does not take lightly, have no bearing on the disposition of this motion) and also to incorporate evidence elicited at the depositions of two witnesses which were not conducted until recently. Plaintiff is seeking a 30-day continuance of this motion to accomplish these goals. <u>Id.</u> at pp. 1-2.

The Court will DENY this motion for several reasons. First, concerning the recently-deposed witnesses, it is apparent from the pleadings that Plaintiff was aware of the existence of these witnesses for some time and never chose to secure that testimony by deposition on his own initiative. Having failed to do so, he may not take advantage of the fact that Defendant was unable to depose them until this late date to postpone these proceedings any further. Further, Plaintiff's motion gives no details of what the testimony of the witnesses is and what relevance it has to this motion (outside of general and conclusory assertions that "they will show [Plaintiff's] driving ability, experience and safety awareness." Decl. of Feyissa, p. 3.).

Secondly, the exchange of allegations between counsel concerning each other's conduct, while a matter of concern to the Court, is not relevant to the disposition of this summary judgment motion and will not be permitted to delay its resolution. Finally, with a trial date of October 16, 2006, the Court finds that delaying consideration of Defendant's summary judgment motion until late September would prejudice the ability of the parties to prepare for trial. For that same reason, the Court is ruling on Plaintiff's motion prior to its noting date and without awaiting a response from Defendant.

For the above reasons, Plaintiff's motion to continue the ruling on this summary judgment motion is DENIED.

**ORDER ON
SUMM JMT - 10**

**Conclusion**

Defendant's request for summary judgment on Plaintiff's claims for violation of § 1981 (Complaint, ¶ 5.1), Washington Law Against Discrimination: Racial Discrimination and Disparate Treatment (¶ 5.2), and Washington's Law of Wrongful Discharge in Violation of Public Policy (¶ 5.4) is GRANTED.  Defendant's motion for summary judgment on Plaintiff's hostile work environment claim is DENIED.

Plaintiff's Motion to Respond and Request for Continuance to Hear Summary Judgment Motion is DENIED.

The clerk is directed to provide copies of this order to all counsel of record.

Dated:  August 31, 2006

> s/Marsha J. Pechman
> Marsha J. Pechman
> United States District Judge

ORDER ON
SUMM JMT - 11